Emerson Emory v. Commissioner.
Emory v. Commissioner
Docket No. 3264-70.
United States Tax Court
T.C. Memo 1971-191; 1971 Tax Ct. Memo LEXIS 139; 30 T.C.M. (CCH) 785; T.C.M. (RIA) 71191; August 5, 1971, Filed Emerson Emory, pro se, 4701 W. Mockinbird, Dallas, Tex. John W. Dierker, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: Year
Deficiency
1964
$1,106.55
1965
1,239.73
1966
1,594.51
1967
2,462.07
Several issues have been conceded by the parties and can be given effect in the Rule 50 computation. The only issue remaining for decision is whether the petitioner is entitled to exclude $3,600 from his gross income in 1967 as a fellowship or scholarship grant under section 117, Internal Revenue Code of 1954, while he was a resident in psychiatry at Terrell State Hospital and in neurology at the Veterans Administration Hospital. Findings of Fact Some *140 of the facts have been stipulated and are so found. Emerson Emory (herein called petitioner) was a legal resident of Dallas, Texas, when he filed his petition in this proceeding. He filed his individual Federal income tax returns for the years 1964 through 1967 with the district director of internal revenue at Dallas. Petitioner was a resident physician specializing in psychiatry for the first 9 months of 1967 at Terrell State Hospital. He specialized in neurology at the Veterans Administration Hospital in Dallas, Texas, the last 3 months of 1967. Petitioner's duties consisted of admitting patients, performing tests and treatment, regular patient care, and other services. Residents on call could admit patients at any time. Petitioner performed essentially the same regular patient care service during his residency at Terrell as did a psychiatrist who had completed his residency, the only difference being that petitioner was assigned a maximum of 25 patients. The quality of patient care at Terrell is improved by the use of residents. Residents are employed by Terrell State Hospital to render a service. They do so under supervision. The purpose of Terrell State Hospital is *141 to give services to mentally ill patients and all such patients must be admitted. The objective of Terrell State Hospital is to insure that all patients admitted receive the best medical care and treatment including psychiatric care and be returned to their homes in the shortest time possible. As part of the consideration of accepting petitioner at Terrell State Hospital, it was necessary for him to agree to future post-residency employment of 2 years. Petitioner worked at Terrell for 10 months after his 3-year residency program was completed. His employment commitment was not enforced beyond that period because the superintendent and his staff no longer desired to continue his services. Terrell residents usually stay the full 2 years. In 1967, 2 out of 4 of the residents who had just completed their training became members of Terrell's medical staff. Terrell State Hospital had a shortage of doctors in 1967. There were 3 to 4 psychiatric residents at Terrell in 1967 and 25 members of the medical staff (including residents). Petitioner's salary as a psychiatric resident was approximately $10,500, $11,400, and $12,000 a year for his first, second, and third years, respectively. *142 During 1967 the petitioner was in the last 3/4 of his first year of residency and the first 1/4 of his second year. Southwestern Medical School, Terrell State Hospital and the Veterans Administration Hospital, along with Parkland Hospital, have an agreement (i e., an interagency contract) whereby residents are switched 786 from one hospital to another during the period of their residency with reciprocal services being rendered to each agency. Under the interagency contract between Southwestern Medical School and Terrell State Hospital, the medical school is paid for furnishing the hospital with qualified physicians. Southwestern Medical School paid petitioner for his work at Terrell State Hospital and then "billed" that hospital for his services under the interagency contract. Terrell paid Southwestern Medical School from funds appropriated by the State legislature. Tax was withheld from petitioner's salary. While at the Veterans Administration Hospital petitioner performed services from which the hospital derived benefit by virtue of the fact that he performed as any other full-fledged doctor would perform in caring for patients and prescribing drugs. The neurology *143 department at Veterans Administration Hospital could not perform its function without the use of residents unless someone else was employed since the neurology service consisted of only one neurologist. From the standpoint of the Dallas Veterans Administration Hospital, the primary purpose of employing residents is for patient care and any benefit by virtue of training derived by the resident is secondary. Since the neurology program was part of the interagency program, the Dallas Veterans Administration Hospital did not pay for petitioner's services per se. Reciprocally, however, the Hospital's own residents were paid while on rotation duty not in excess of 3 months at other affiliated hospitals. Petitioner had a nonremunerative contract with Parkland Hospital during 1967 which allowed him to practice there, However, he did not spend any time at Parkland in 1967. All amounts paid either directly or indirectly to petitioner in 1967 by Terrell State Hospital and the Dallas Veterans Administration Hospital represented compensation for either present or future services. Opinion This is another in a rash of recent cases in which resident physicians in various specialties attempt *144 to exclude part of their income as a fellowship or scholarship grant under section 117, Internal Revenue Code of 1954. If any one of the conditions set forth in section 1.117-4(c), [1] Income Tax Regs., is present in this case, the claimed exclusion of $3,600 for a fellowship or scholarship grant cannot be allowed. The validity of regulations under section 117 has been upheld by the Supreme Court of the United States. Bingler v. Johnson, 394 U.S. 741 (1969). *145 The evidence in this record establishes that the conditions existed in 1967 to deprive petitioner of the exclusion. As to the rendering of present employment services, Dr. Luis M. Cowley, the Superintendent of Terrell State Hospital, testified that the purpose of the hospital was to render services, and that the hospital admitted all patients. The residents furthered that purpose. The residents admitted patients, performed tests, administered treatment, handled regular patient care, and contributed to the quality of the care received by the patients. Dr. T. A. McDowell, the Chief of Professional Services at the Dallas Veterans 787 Administration Hospital, said substantially the same thing with respect to that hospital. He further stated that if neurology residents were not available, additional doctors would have to be employed to replace them because the hospital could not function without them. As to future employment services, Dr. Cowley testified that a resident is required to agree, at least orally, to stay for 2 years after his residency is completed in order to qualify for the program. He stated that residents normally do remain the full 2 years, but that the petitioner *146 did not stay simply because, for some reason, the hospital was not interested in retaining his services. It is clear that the payments petitioner received were for services which were subject to the direction or supervision of the grantor since all members of the staff of Terrell State Hospital were subject to supervision, as shown by the constitution and bylaws of the hospital. Furthermore, Dr. Cowley testified that the petitioner was supervised. One distinction which the petitioner attempted to make between residents and regular hospital employees was that residents are not permitted to live on the hospital grounds. Dr. Cowley refuted this assertion by stating that housing on the grounds was on a first come-first served basis. Where the primary purpose of paying the resident is for patient care or other services rendered to the hospital, the exclusion is not allowable. Aloysius J. Proskey, 51 T.C. 918 (1969); and Wertzberger v. United States, 315 F. Supp. 34 (W.D. Mo., 1970); affirmed per curiam 441 F. 2d 1166 (C.A. 8, 1971). See also the recent case of Coggins v. United States, 26 A.F.T.R. 2d 70-5775 (N.D. Tex., 1970). Similar *147 to the instant case, Dr. Coggins, a urology resident, was employed by a public agency which relied heavily upon residents to operate the hospital. Accordingly we have concluded, and found as a fact, that all payments received by the petitioner were compensation either for present or future services. Moreover, the facts of this case show that the program under which petitioner was working was the result of a cooperative effort between various State agencies. The interagency contract between Terrell State Hospital and the University of Texas Southwestern Medical School provides that the two State agencies have been authorized by "the Interagency Cooperation Act (House Bill 312, Acts of the 53rd Legislature, Regular Session, 1953) * * * to enter into interagency contracts and agreements for reimbursement for services which will increase the efficiency and economy of State governmental administration." Since both the Terrell State Hospital and Southwestern Medical School were engaged in a joint and cooperative effort in connection with petitioner's residency, each may be viewed as employers of the petitioner and grantors of his stipend. See Jerry S. Turem, 54 T.C. 1494 (1970); *148 and Marjorie E. Haley, 54 T.C. 642 (1970). Additionally, under the rationale of Turem and Haley, the interagency arrangement among the affiliated hospitals, including the Veterans Administration Hospital, may be similarly viewed as a cooperative effort. It is immaterial whether Southwestern Medical School or the State of Texas is the grantor of the funds paid petitioner rather than Terrell State Hospital. The amounts were channeled through Terrell State Hospital and Southwestern Medical School to petitioner. Payments to the petitioner from the medical school were clearly made for services performed for the benefit of Terrell State Hospital and, to a lesser extent, for the benefit of the affiliated Veterans Administration Hospital. Consequently, if either the State of Texas or Southwestern Medical is deemed to be the "grantor" of these funds, the funds were "granted" to petitioner conditional upon his performing services for the hospitals. Finally, it is immaterial that petitioner's motivation in becoming a resident in psychiatry was for the purposes of training and education. What is material, indeed significant, is the motivation of the grantor in disbursing the stipends. *149 In Aloysius J. Proskey, supra at 925, this Court said: There can be no serious doubt that work as a resident physician provides highly valuable training, particularly in preparing for specialties in the various fields of medicine. Yet virtually all work as an apprentice, whether in medicine or law, carpentry or masonry, provides valuable training. Nothing in section 117 requires that an amount paid as compensation for services rendered be treated as a nontaxable fellowship grant, merely because the recipient is learning a trade, business, or profession. Whatever training petitioner received during the years 788 of his residency - and we do not deny that it was substantial - was merely "incidental to and for the purpose of facilitating the raison d'etre of the Hospital, namely, the care of its patients." Ethel M. Bonn, 34 T.C. 64, 73 (1960); Woddail v. Commissioner, supra. We conclude that petitioner was an employee of University Hospital and was paid the stipend as compensation for the services which he rendered. See Stewart v. United States, 363 F. 2d 355 (C.A. 6, 1966). We hold that the petitioner is not entitled to an exclusion of *150 $3,600 for the year 1967 as a fellowship or scholarship grant. To reflect this conclusion on the disputed issue and the concessions of the parties on other issues. Decision will be entered under Rule 50. Footnotes
1. § 1.117-4 Items not considered as scholarships or fellowship grants. The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117: * * * (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of § 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117↩ if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant.